# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:19-CV-00151-KDB

| | |
|---|---|
| MELANIE ROSE VELAZQUEZ,<br><br>        **Plaintiff,**<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>        **Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Melanie Rose Velazquez's Motion for Summary Judgment (Doc. No. 12) and Defendant's Motion for Summary Judgment (Doc. No. 15), as well as the parties' briefs and exhibits. Ms. Velazquez, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Title II disability insurance benefits and Title XVI supplemental security income.

Having carefully reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court finds that the Commissioner's decision to deny Plaintiff social security benefits is supported by substantial evidence. Accordingly, the Court will **DENY** Plaintiff's Motion for Summary Judgment; **GRANT** Defendant's Motion for Summary Judgment; and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Ms. Velazquez filed an application for Title II disability insurance benefits and Title XVI supplemental security income on July 29, 2015. She alleged an onset date of November 1, 2014.

1

(Tr. 354, 358).[1] Her claims were initially denied on November 18, 2015 and again on reconsideration on April 19, 2016. (Tr. 220, 230, 234, 243). Ms. Velazquez timely requested a hearing before an ALJ, (Tr. 248), and a hearing was held with Administrative Law Judge Mary Reyrse presiding on June 5, 2018. (Tr. 310). Judge Reyerse returned an unfavorable decision on September 24, 2018. (Tr. 102). Ms. Velazquez requested review of the ALJ's decision with the Appeals Council ("AC"). The AC denied review on September 23, 2019. (Tr. 2). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Velazquez has requested judicial review in this Court pursuant to 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration to determine if Ms. Velazquez was disabled during the relevant period.[2] "Disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). At step one, the ALJ found that Ms. Velazquez had not engaged in substantial gainful activity since the alleged onset date of November 1, 2014 and that she was insured for Title II purposes through December 31, 2021. (Tr. 108, Findings 1 & 2). At step two, the ALJ found that

---

[1] Citations to the administrative record filed by the Commissioner are designated as "Tr."

[2] The ALJ must determine the following under the five-step sequential evaluation: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

Ms. Velazquez had the following severe impairments: "myofascial pain syndrome, lumbar radiculopathy, cervical radiculopathy, coccydynia [sic], fibromyalgia, left foot plantar facsciitis [sic], bipolar disorder, general anxiety disorder, depressive disorder, panic disorder, obsessive-compulsive disorder trait, and borderline personality trait." (Tr. 108, Finding 3). The ALJ considered Ms. Velazquez's impairments under the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926) at step three and found that they did not meet or medically equal any listing. (Tr. 108, Finding 4).

At step four, the ALJ found that Ms. Velazquez had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)

> in that the claimant can lift/carry 20 pounds occasionally, 10 pounds frequently, stand/walk up to six hours in an 8-hour workday, and sit up to six hours in an 8-hour workday. However, the claimant also requires the option to alternate between 30 minutes of sitting and 30 minutes of standing. The claimant can only occasionally climb, stoop, and crouch. Further, the claimant is limited to performing no more than simple routine tasks. The claimant is capable of maintaining concentration, persistence, and pace for two-hour periods during the workday. The claimant is limited to occasional interaction with the public, and requires a stable work environment, which means few and infrequent changes to her work routine.

(Tr. 110-11, Finding 5). The Vocational Expert ("VE") testified that Ms. Velazquez could not perform her past relevant work of pharmacy technician, scheduler, sales person-nursery products, and landscape gardener. The ALJ adopted the VE's testimony and found that Ms. Velazquez could not return to her past relevant work. (Tr. 115, Finding 6). The ALJ then proceeded to step five where she found that, considering Ms. Velazquez's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Ms. Velazquez can perform. The ALJ identified Office Helper, Router, and Order Caller as some of these available jobs. (Tr. 115-16, Finding 10). Accordingly, the ALJ determined that Ms. Velazquez had not been

3

under a disability from the date of the alleged onset date through the date of her decision. (Tr. 118, Finding 11).

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151-52 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id*. at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Accordingly, this Court does not review a final decision of the Commissioner *de novo*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry,* 952 F.3d at 120 (internal citations omitted). *See also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d

650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].")

Thus, while the Court must always ensure that proper legal standards are being followed, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*. (internal quotation marks omitted); *Shinaberry,* 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

The question before the ALJ was whether Ms. Velazquez became disabled under the Social Security Act during the relevant time period. Ms. Velazquez argues that the ALJ's decision should be reversed and remanded based on two assignments of error. First, she contends that the ALJ's assignment of little weight to the opinion of her treating provider, Dr. Laguerre, is harmful error that is not supported by substantial evidence. Second, Ms. Velazquez asserts the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to offer a "function-by-function" analysis to explain how she arrived at her conclusions and failed to resolve evidence that contradicted her RFC findings.

While the ALJ's written decision could be improved, the Court finds that there is substantial evidence to support a finding that Ms. Velazquez is not disabled. Keeping in mind the applicable evidentiary threshold for this Court's review, a reasonable mind could accept the lack of positive objective medical findings, conflicting medical opinions, the fact that Ms. Velazquez worked part time, and evidence of Ms. Velazquez's daily activities as adequate to support the conclusion that Ms. Velazquez is not disabled.

### A. The ALJ's assignment of little weight to the opinion of Dr. Laguerre is not reversible error.

Ms. Velazquez's first assignment of error is that the ALJ improperly weighed the opinion of her treating physician and did not fully explain her reasons for giving his opinion "little" weight. She contends that the ALJ failed to properly consider and apply *all* of the evaluating factors outlined in the regulations and give a "good reason" in the decision for the weight she assigned Dr. Laguerre's medical opinion. Ms. Velazquez argues that if the ALJ had properly considered the evaluating factors, the ALJ would have afforded Dr. Laguerre's opinion controlling weight, or at least substantial weight, and accounted for his opinion in the RFC.

Dr. Laguerre has been Ms. Velazquez's treating or supervising pain management specialist since November 2014. Dr. Laguerre occasionally referred Ms. Velazquez to other doctors and made treatment recommendations as appropriate. For instance, Dr. Laguerre referred Ms. Velazquez for a functional capacity exam ("FCE") to evaluate her capacity to perform work activities.

On October 1, 2017, Dr. Laguerre wrote a letter opining that Ms. Velazquez was unable to work. Basing his opinion on the results of the FCE, Dr. Laguerre stated:

> Ms. Melanie Velazquez has been a patient of our practice at Lake Norman Anesthesia and Pain Management over the last several years. The patient suffers from degenerative lumbar spine disease and fibromyalgia syndrome. The patient

> recently completed a functional capacity exam to determine her ability to work. The patient's work classification was deemed to be cannot work. The patient had difficulty with occasional sitting, standing, walking, forward and overhead reaching. The patient did not have ability for critical balancing. The patient was not able to lift greater than 10 pounds occasionally, anything more than 5 pounds frequently. Ms. Velazquez did appear to have a good effort throughout the exam per the therapist's report.

(Tr. 1518, 1540).

After reviewing the record and treatment notes, the ALJ determined that Dr. Laguerre's opinion was entitled to little weight. The ALJ explained her reasoning as follows:

> Dr. Laguerre references a functional capacity examination completed, but fails to address evidence in the record that notes the validity of that assessment was questionable and unreliable. Further, disability is an issue reserved to the Commissioner pursuant to 20 CFR 404.1527(d) and 416.927(d), nor is there any indication that Dr. Laguerre has any vocational expertise. For these reasons, little weight is given to the medical opinions of this medical source.

(Tr. 113).

Agency regulations require that a treating source opinion be afforded controlling weight only if it is both "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992) (per curiam); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

A treating physician's opinion that does not receive controlling weight may have some persuasive content. To that end, an ALJ must consider the following factors to determine the weight to afford a treating physician's non-controlling opinion: "(1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency

7

of the opinion [with the record as a whole]; (5) whether the physician is a specialist in the area in which he is rending an opinion; and (6) other factors that support or contradict the opinion." *Barbare v. Saul*, 816 F. App'x 828, 832 (4th Cir. June 18, 2020) (citing 20 C.F.R. § 404.1527(c)). These factors do not create a checklist the ALJ must run through when discussing each opinion. *Id.* Rather, the ALJ's decision should be viewed as a whole to determine whether she gave due consideration to the various factors. *Id.*

"An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has not given good reason for the weight afforded to a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, at *2 (4th Cir. 1999) (table) (citations omitted). While an ALJ must evaluate any medical opinions in the record, the conclusion that a patient is disabled or unable to work are administrative findings that are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Opinions from medical sources on issues reserved to the Commissioner, such as disability, are not entitled to any special weight. 20 C.F.R. §§ 404.1527(d) (3), 416.927(d)(3).

Dr. Laguerre's opinion does not warrant controlling weight. As stated above, a treating source opinion is afforded controlling weight only if it is both "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). Here, Dr. Laguerre's opinion conflicts with other medical opinions in the record. For example, State Agency consultant Dr. Levine opined that claimant had a medium RFC, with some additional limitations. (Tr. 190-203, 204-217).[3] Ms.

---

[3] Notably, the ALJ afforded only little weight to Dr. Levine's opinion, finding that a review of the full record indicated that the combination of Ms. Velazquez's severe medically determinable impairments reduced her RFC to light work with some additional restrictions. Thus, the ALJ appears to have taken a middle path between Dr. Laguerre and Dr. Levine in determining Ms. Velazquez's RFC.

Velazquez claims that the opinion of Dr. Burgess, a consultative examiner, is consistent with and supports Dr. Laguerre's opinion, but Dr. Burgess's opinion merely indicates that the claimant's ability to bend, stoop, lift, walk, and engage in various postural positions was "mildly to intermittently more moderately impaired." (Tr. 667). "Mildly to intermittently more moderately impaired" is not a disabling limitation. With conflicting medical opinions in the record, the ALJ did not err by affording Dr. Laguerre's opinion less than controlling weight.

Nor did the ALJ commit reversible error by giving Dr. Laguerre's opinion less than substantial weight. As for Ms. Velazquez's argument that the ALJ failed to consider the factors in evaluating a medical opinion as outlined in the regulations, there is no requirement that the ALJ explicitly mention every factor listed in 20 C.F.R. § 404.1527(c). *See Barbare*, 816 F. App'x at 832; *Clontz v. Astrue*, No. 2:12-cv- 00013-FDW, 2013 WL 3899507, at *7 (W.D.N.C. July 29, 2013) (finding that the regulations do not require the ALJ to specifically discuss every factor in 20 C.F.R. § 1527(c)(2)). Furthermore, Dr. Laguerre's opinion takes the FCE at face value. As the ALJ recognized, Dr. Laguerre fails to address the reliability questions raised by the physician administering the FCE. The FCE's reliability profile reflected that Ms. Velazquez "passed 7/10 validity criteria during the FCE, 70%, which suggests fair effort and valid results which can be used to assist medical and vocational planning." (Tr. 711). However, the report also stated that "the validity profile may be unreliable since less than 20 criteria were scored and other data should also be considered." (Tr. 711). Dr. Laguerre's silence regarding these reliability issues cuts against his opinion.

Additionally, Dr. Laguerre's opinion is undermined by Ms. Velazquez's daily activities, such as her part time work as a parking attendant and the mothering of her two children. The record reflects that Ms. Velazquez is capable of living relatively independently and raising her children.

9

Case 5:19-cv-00151-KDB   Document 17   Filed 12/01/20   Page 9 of 12

While she lives with her mother, the ALJ commented that she did so due to financial reasons as opposed to an inability to function independently. (Tr. 110). After filing for disability, Ms. Velazquez worked as a parking attendant a few days a week. She has since quit that job. For these reasons, the Court does not find that the ALJ's decision to give Dr. Laguerre's opinion little weight is reversible error.

### B. The ALJ's determination is supported by substantial evidence.

Ms. Velazquez's strongest argument is that the ALJ failed to build an accurate and logical bridge linking the medical evidence to her conclusion. An ALJ is required to consider all of the claimant's "physical and mental impairments, severe and otherwise, and determine on a function-by-function basis, how they affect [one's] ability to work." *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016). In doing so, the ALJ must provide a "narrative discussion describing how the evidence supports each conclusion." Social Security Regulation ("SSR") 96-8P, 1996 WL 374184 at *7 (July 2, 1996). Once the ALJ has completed this function-by-function analysis, she can make a finding as to the claimant's RFC. *Thomas*, 916 F.3d at 311. If an ALJ gives insufficient explanation for the district court to meaningfully review, it is grounds for reversal. *Id.* at 312 (reversing when "the ALJ's analysis of [claimant's] RFC contain[ed] too little logical explanation for [the court] to conduct meaningful appellate review"); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review").

The ALJ broadly summarizes the medical evidence and briefly describes what weight to give the medical opinions. While the ALJ's decision would have benefitted from a more thorough explanation of her reasoning, the ALJ's analysis is not so lacking that it prohibits meaningful

10

review. Evidence of Ms. Velazquez's daily activities and part time work, conflicting medical opinions, and the lack of objective medical findings weigh in favor of the ALJ's determination. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (finding that the plaintiff's work activities and daily physical activities support the ALJ's conclusion that plaintiff had failed to prove he was disabled); *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984) (holding that subjective evidence of pain cannot take precedence over objective medical evidence or lack thereof).

The ALJ noted that treatment records from 2014-2015 showed pain increased with prolonged standing, walking, sitting, lifting, and carrying. However, those same records reflected that Ms. Velazquez's pain improved and benefited from conservative treatment. (Tr. 111, 607-610); *cf. Gross v. Heckler*, 785 F.2d 1163, 1165-66 (4th Cir. 1986) (acknowledging that symptoms that are reasonably controlled by treatment or medication are not disabling). In 2016, treatment records showed that there was no significant decrease in her functional abilities while receiving conservative treatment. (Tr. 701-710, 716-724, 767-781). Ms. Velazquez reported to Dr. Laguerre that she was still capable of taking care of her children, remained active, was doing well with her established treatment regimen, and that she was overall in a good place. (Tr. 767, 794, 1526).

Ms. Velazquez's problems with overhead and forward reaching are not as supported by the record as she suggests. *See Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) ("[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant."). At least one medical provider indicated that her objective medical testing was "essentially negative for any positive musculoskeletal disorder," and indicated that she was "reluctant to consider a medication taper as well as participating [in] more conservative methods of controlling her pain." (Tr. 112, 1523-1531). While she does have a

cervical disc herniation, an MRI of the lumbar spine was unremarkable and an MRI of the cervical spine showed no acute abnormality, her alignment was normal, she had minimal disc bulging at L3-L4 and L4-L5 without significant canal or foraminal narrowing, and only minimal degenerative changes without significant canal or foraminal narrowing. (Tr. 557, 573). Other medical evidence shows no pain with neck flexion, extension, or lateral flexion; negative shoulder maneuvers; and normal and symmetric bilateral upper extremity strength. (Tr. 559-60). As recently as 2018, a physical examination showed that she had muscle strength of +5 and intact bilateral upper extremities. (Tr. 1524).

For these reasons and keeping in mind the appropriate deference afforded to the ALJ, the Court finds that there is substantial evidence to support the ALJ's determination that Ms. Velazquez is not disabled.

## V.  ORDER

**IT IS THEREFORE ORDERED** that:

(1) Plaintiff's Motion for Summary Judgment, (Doc. No. 12), is **DENIED**;

(2) Defendant's Motion for Summary Judgment, (Doc. No. 15), is **GRANTED**; and

(3) Plaintiff's Second Motion for Extension of Time of Scheduling Order Deadlines, (Doc. No. 11), is **DENIED AS MOOT**.

**SO ORDERED.**

Signed: December 1, 2020

Kenneth D. Bell
United States District Judge